IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                                 No.  CR 05-924 RB

KACEY LAMUNYON,

        Defendant.

### DEFENDANT LAMUNYON'S MOTION FOR SEVERANCE FROM CO-DEFENDANTS

**COMES NOW** Defendant Lamunyon, by and through his attorneys of record, Jess R. Lilley and Michael Stout, hereby moves this Court pursuant to Fed. R. Cr. Pro. Rule 14 to sever his trial from Co-defendants Eugenio Medina and Larry Lujan in order for him to receive a fair trial.

### CASE BACKGROUND

Mr. Lamunyon, along with co-defendant Medina and Lujan, is charged with one count of kidnaping resulting in death in violation of 18 U.S.C. §1201, and one count of witness tampering resulting in death in violation of 18 U.S.C. §1512. The Government filed a Notice of Intent to Seek Death Penalty as to Lujan.  There has been no such notice filed against Mr. Lamunyon or Medina, and the Government has indicated the Attorney General's Capital Review Committee has not certified either Mr. Lamunyon or Medina for death consideration.  Mr. Lamunyon and Medina are facing the possibility of life in prison if convicted on either count.

The charges arise from the death of Dana Grauke.  The Government alleges that Grauke was kidnaped in San Antonio, Texas, then transported to Anthony, New Mexico, where he was killed.

Grauke's body was discovered in an irrigation canal near Anthony, New Mexico. It appears Grauke's death was caused by knife wounds.

***Government's Theory***

The Government alleges that the case starts in San Antonio, Texas, where all defendants and Grauke lived. Lujan, Lamunyon, and possibly others went to Grauke's residence where Grauke was allegedly beaten by Lujan. This encounter took place because Lujan wanted money from Grauke as a tax for selling drugs. Lujan, Lamunyon and others, including Grauke, then were given a ride in a truck to Randy Leal's home. Some property from Grauke's residence was also loaded into the truck. After a short stay at Leal's home, Grauke was driven around San Antonio in Defendant Medina's car. At one time Grauke was in the back seat with Lujan where Lujan allegedly made Grauke perform oral sex on him. At another time Grauke was put in Medina's trunk. The group eventually borrowed a Jeep. Grauke was put in the cargo area of the Jeep with a bandana tied over his mouth. Lujan, Lamunyon, Medina, Ashley Almorejo and Jalisco Holmes then traveled to Anthony, New Mexico at the direction of Lujan. Lujan has family and friends who live in the Anthony area.

Grauke was killed solely and independently by Lujan. Defendant Lamunyon did not participate in any way in the killing. The Government will present evidence that all defendants were at a home in Anthony occupied by friends or family of Lujan, and that Grauke was restrained in the cargo area of a Jeep during the visit. Defendant Lujan then left the party alone in the Jeep with Grauke, and when he returned Grauke was no longer in the Jeep. Defendants Lamunyon and Medina were not with Lujan when he left the party with Grauke, and they played no role in the actual killing.

**SEVERANCE**

The trial court maintains discretion whether to grant severance under Rule 14. *United States v. Dirden*, 38 F.3d 1131, 1140 (10th Cir. 1994). In makings this determination, the court must weigh the potential prejudice to the defendant against considerations of judicial economy and efficiency. *Id.* Defendant Lamunyon's trial should be severed from both Lujan and Medina because; 1) he would be unduly prejudiced by inadmissable statements of each co-defendant that inculpate him, 2) he would be unduly prejudiced by being tried with a death eligible co-defendant, and 3) he would be unduly prejudice by evidence admitted by the co-defendants which is inadmissible including, evidence of bad acts of the co-defendants.

*1.      Severance Mandated Under Bruton*

Under *United States v. Bruton,* 391 U.S. 123, 126, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) a defendant's "right to cross-examination secured by the Confrontation Clause of the Sixth Amendment" is violated if the jury is presented with a non-testifying co-defendant's confession that also implicates the defendant but is not admissible against the defendant. Thus, if the Government intends to introduce the statements of Lujan and Medina in a joint trial that inculpate Mr. Lamunyon, he is entitled to a severance from both. As both Medina and Lujan gave tape-recorded statements inculpating Mr. Lamunyon, *Bruton* mandates severance.

Kidnaping resulting in death in violation of 18 U.S.C. §1201 requires the Government to prove that Mr. Lamunyon did unlawfully "seize, confine, inveigle, decoy, kidnap, [or] abduct" Grauke and then transported him across state lines. 18 U.S.C. §1201. A review of the statements given by Medina and Lujan implicate Mr. Lamunyon on both the seizing and transporting elements. Some of these statements, which were all tape-recorded and given to law enforcement, are the

following:

**Medina Statement- May 30, 2005:**

Page 3-4: Identifies defendant Lamunyon sitting in the back with Grauke when they arrived at Leal's house in the truck. Lujan and Holmes were also in the truck.

Page 4: States Lujan was telling defendant Lamunyon on the way to Anthony that he wanted to "get rid of him" which was a reference to Grauke.

Page 6: States he (Medina), Lamunyon, Lujan, and Grauke were driving around in his car.

Page 7: States while driving around in his car they stopped at Joe Black's house where only Lujan and defendant Lamunyon got out and went in, and that when Larry got back into the car he had a <u>meat cleaver</u>.

Page 8: While riding around in his car, defendant Lamunyon saw Lujan force Grauke to give Lujan oral sex in the back seat. Lujan told Grauke he would kill him if he did not do it. Grauke then said he knew he was "already going to die. Cause you are going to kill me." As Mr. Lamunyon was in the front seat, it is presumed Medina would indicate Mr. Lamunyon also heard these statements.

Page 9: When asked "So you guys didn't take no clothes or anything? Okay. Did he know, what was the plan, what were you guys going to do in New Mexico?" Medina responded "Larry was going to kill him and leave him there." The term "guys", includes Lamunyon.

Page 14: Indicates that defendant Lamunyon hit Grauke lying in the Jeep cargo area in Anthony.

Page 14: When asked if Lujan ever told "you guys" (including Lamunyon) that he was going to kill Grauke in New Mexico, indicates that Lujan said "he was going to chop off his finders and try to cut off his head."

Page 16: That Mr. Lamunyon, Lujan, and another female left the home in Anthony to get beer while Grauke was still in the Jeep.

Page 20: The day after arriving in Anthony, Mr. Lamunyon and Lujan picked up money wired to Lamunyon at the direction of Lujan. Mr. Lamunyon was the only one with identification.

Page 21: Iindicates that Defendant Lamunyon told him (Lamunyon) that Lujan was going to "chop off" Grauke's fingers.

Page 24: Medina states he believes that Mr. Lamunyon, Holmes, and another helped kidnap Grauke from Grauke's house.

**Medina Statement-April 4, 2005**

Page 14-16: States Mr. Lamunyon was in the Jeep asleep prior to Lujan leaving alone with Grauke, and when Mr. Lamunyon came into the house he said that "Larry took off."

Page 23-26: States that Mr. Lamunyon and Lujan were talking about Grauke and that they said that "[j]ust that he fucked up and all that stuff," that "he messed up bad," and that Larry said "he has to take the consequences."

Page 28: Indicates that Holmes was mad because he knew what "they were gonna do, you know KC and them were gonna do."

Page 29: When Medina was asked "Okay. In your opinion, who in this vehicle was involved in what was happening to this guy?" Medina's response was "I say probably KC."

**Medina Statement- July 6, 2005**

Page 11: Indicates that Mr. Lamunyon helped Lujan unload Grauke's property when the arrived at Leal's home.

Page 28: Indicates that Mr. Lamunyon helped drive the Jeep on the way from San Antonio

to Anthony.

      Page 40: Indicates that Mr. Lamunyon knows Lujan is a "crazy vato."

      Page 42: Indicates that "we know that he was gonna fuck up Grauke."

**Lujan Statement- May 28, 2005**

      Page 23-24: States that Mr. Lamunyon traveled with him to New Mexico and "all went partying."

      Page 37: States that he has seen Mr. Lamunyon at Grauke's house "smoking like all of us do."

      Page 53 & 82: States that Mr. Lamunyon was wired some money while they were in New Mexico.

      The statements above clearly inculpate defendant Lamunyon in the kidnaping and transportation of Grauke across state lines, in that (1) he was present and involved in taking Grauke and his property from his home; (2) he was present when Grauke was driven around San Antonio and forced to perform oral sex on Lujan; (3) he helped drive Grauke to New Mexico; (4) he was aware that Grauke would be injured and would have his head chopped off; (4) he knew Lujan left alone with Grauke prior to his disappearance; and (5) that he knew what Grauke's consequences would be.

      *Bruton* is based on the right to effective confrontation. If neither Medina nor Lujan testify at trial, then these statements are clearly not admissible against Lamunyon because he would not have the right to confront either. *Bruton*; See also *Crawford v. Washington* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed. 2d 177 (2004) (out of court testimonial statements cannot be admitted unless the witness is unavailable and the accused has had a chance to cross examine the declarant). Obviously

6

one cannot predict whether or not Medina or Lujan would testify in a joint trial. If the Government introduces these statements in its case-in-chief at a joint trial and neither Medina or Lujan testify, then Lamunyon would be entitled to a severance at that time. This would cause further delay and a waste of judicial resources. Lamunyon's trial should be severed from both Lujan and Medina now under *Bruton.*

### 2.  *Severance from Capital Defendant Lujan is Warranted to Avoid Substantial Prejudice to a Non-Capital Defendant*

There are substantial conflicts which arise when a non-capital defendant is tried with a capital defendant. The jury selection process is profoundly different in a death penalty case. There is also substantial evidence that death-qualified juries are more prone to convict than is a non death-qualified jury. There are many tactical decisions in presenting witnesses, evidence, and cross examination that are different for capital and non-capital defendants. Mr. Lamunyon should not be required to fight these factors in addition to the numerous other trial issues he faces. These factors warrant a severance from Lujan.

In a capital case the prospective jurors must be questioned about their views on the death penalty, and how this view would affect their ability to follow the law on both the guilt and sentencing phases. *Witherspoon v. Illinois*, 391 U.S. 510 (1968). Those with views that impair one's ability to act according to the instructions given by the court should be challenged for cause. *Adams v. Texas* 448 U.S. 38, 45 (1980). Prospective jurors will be asked about their opinion on capital punishment. The difference between the guilt and sentencing phases will have to be explained at length. The statutory scheme on the sentencing phase with sets for the aggravating and mitigating factors will have to be discussed. Capital defendants are entitled to additional peremptory

challenges pursuant to 18 U.S.C 1832, which Mr. Lamunyon will presumably not be allowed.

Because of possible jury sentencing, voir dire includes death penalty issues. This type of questioning at the beginning of a trial would unfairly focus jurors on sentencing issues at the outset. These inquires will lead jurors to infer guilt despite any admonition by the court not to do so. Additionally, most of these inquiries would also be irrelevant to Lamunyon, a non-death defendant. Lamunyon does not want or deserve to be unfairly prejudiced because sentencing and hypothetical questions of guilt are discussed at the start of his trial. His case will undoubtedly seem less serious to potential jurors. Lamunyon will be focused solely on the guilt phase.

Death-qualified jurors are prone to convict and are less concerned about constitutional rights such as the right for a defendant not to testify or the presumption of innocence. This issue was raised in 1968 in *Witherspoon* where the court, despite finding the death-qualified jurors in that case were not prone to convict, acknowledged a defendant's right to a fair determination of guilt or innocence might be compromised if there was any evidence of an initial bias toward guilt. *Witherspoon*, 391 U.S. at 521 n18.

If needed by the Court, defendant Lamunyon would request funding under the Criminal Justice Act to present expert testimony regarding the issues discussed herein pertaining to trials with capital and non-capital defendants.

3.  ***Severance from Defendant Lujan is Warranted Because of the Inadmissible Evidence Against Lujan including 404(b) evidence.***

The court has discretion to grant a severance under Rule 14 when a joint trial unfairly prejudices the defendant. The Government has previously indicated in court that it would likely seek to introduce Rule 404(b) evidence against Defendant Lujan relating to two other brutal murders

in the Las Cruces area for which he is currently charged in New Mexico state court. This evidence is not admissible against Mr. Lamunyon. It would be hard to conceive how a jury would not hold Lujan's alleged conduct in two different cases against Mr. Lamunyon thus increasing the likelihood he would be convicted through guilt-by-association. "It is questionable whether a jury would be able realistically to compartmentalize the disparate evidence with respect to each defendant." *United States v. Sampol*, 636F.2d 621, 647 (D.C.Cir. 1980).

*Conclusion*

Due to the evidence which the Government intends to introduce against the co-defendants which in inadmissible against Mr. Lamunyon, he should not be tried before the same jury. He is entitled to confront the statements of the co-defendants. He is entitled to be free of the prejudice caused by the death penalty proceeding which does not involve him. He is entitled to be free of highly prejudicial and inadmissible character evidence against a co-defendant.

To deny severance in these circumstances would violate Mr. Lamunyon's rights under the 5th, 6th and 8th amendments to the United States Constitution.

**WHEREFORE** Defendant moves this Court to enter an Order severing his trial from both co-defendants Medina and Lujan.

in the Las Cruces area for which he is currently charged in New Mexico state court. This evidence is not admissible against Mr. Lamunyon. It would be hard to conceive how a jury would not hold Lujan's alleged conduct in two different cases against Mr. Lamunyon thus increasing the likelihood he would be convicted through guilt-by-association. "It is questionable whether a jury would be able realistically to compartmentalize the disparate evidence with respect to each defendant." *United States v. Sampol*, 636F.2d 621, 647 (D.C.Cir. 1980).

*Conclusion*

Due to the evidence which the Government intends to introduce against the co-defendants which in inadmissible against Mr. Lamunyon, he should not be tried before the same jury. He is entitled to confront the statements of the co-defendants. He is entitled to be free of the prejudice caused by the death penalty proceeding which does not involve him. He is entitled to be free of highly prejudicial and inadmissible character evidence against a co-defendant.

To deny severance in these circumstances would violate Mr. Lamunyon's rights under the 5th, 6th and 8th amendments to the United States Constitution.

**WHEREFORE** Defendant moves this Court to enter an Order severing his trial from both co-defendants Medina and Lujan.

Respectfully submitted,

LILLEY LAW OFFICES						LAW OFFICES OF MICHAEL STOUT

*Electronically filed September 7, 2007*

 /s/ Jess R. Lilley					 /s/ Michael L. Stout
Jess R. Lilley						Michael L. Stout
Co-counsel for Lamunyon				Co-counsel for Lamunyon
1014 S. Main Street					910 Lake Tahoe Ct.
Las Cruces, NM 88005					Las Cruces, NM 88007
(505) 524-7809						(505) 524-1471


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically submitted, mailed/hand-delivered on this the 7th day of September 2007, to opposing counsel, to wit:

Maria Armijo
U.S. Attorney's Office
555 S. Telshor, #300
Las Cruces, NM 88011

/s/ Jess R. Lilley
Jess R. Lilley