IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                                        Criminal No. 05-924 RB

LARRY LUJAN,
KACEY LAMUNYON and
EUGENIO MEDINA,

        Defendants.

## DEFENDANT EUGENIO MEDINA'S MOTION FOR SEVERANCE

The Defendant Eugenio Medina, by and through his attorney Billy R. Blackburn, pursuant to the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and Rule 14 of the Federal Rules of Criminal Procedure, hereby requests this Court sever his trial from that of the co-defendants Larry Lujan and Kacey Lamunyon. In support thereof, Medina states as follows:

### Background

On July 10, 2007, Medina, Lujan and Lamunyon were charged in a Third Superseding Indictment with one count of kidnaping resulting in death and one count of witness tampering resulting in death. (Doc. No. 145). In connection therewith, the Government filed a Notice to Seek Death Penalty against Lujan, but not against Medina or Lamunyon. (Doc. No. 146). Discovery provided to date indicates the following factual background will form the basis of the Government's case at trial.

The allegations surround an apparent homicide involving Dana Joe Grauke, who the Government alleges was taken from his home in San Antonio, Texas, and transported to an area around Anthony, New Mexico, before being found dead of apparent knife wounds.  The Government is expected to present evidence that Lujan, Lamunyon and others went to the Grauke residence and assaulted and kidnaped Grauke due to a disagreement over Grauke's drug-dealing activities with Lujan.  Grauke was transported to another home, where the Government will allege Medina appeared sometime thereafter.

It is expected the Government will present evidence that the defendants then transported Grauke in Medina's car around the city of San Antonio, at times in the trunk of the car.  Eventually, Medina, Lamunyon, Lujan, Jalisco Holmes and Ashley Almorejo borrowed a Jeep Cherokee from Lujan's sister, and used it to transport Grauke to New Mexico.  After driving to New Mexico, the group stayed and "partied" with friends of Lujan in and around Anthony, New Mexico, where Grauke's body was eventually discovered.

Upon reviewing discovery provided, it appears the Government will allege that Lujan was solely responsible for the actual killing.  Medina remained behind at Lujan's friend's residence when Lujan took Grauke away in the Jeep and returned without Grauke.  There is no indication from discovery that Medina was involved in the killing, as the Government will present evidence that Lujan left the location where Medina was at with Grauke before returning without him.

The Government also may elicit evidence concerning prior drug dealing activities of Lujan.  It has also indicated it will attempt to offer evidence under Rule 404(b) of the

2

Rules of Evidence regarding Lujan's alleged involvement in several other murders of which Medina had absolutely no involvement. Furthermore, Lujan and Lamunyon both gave statements to investigators in connection with this case which the Government may attempt to enter into evidence.

**Argument**

Rule 14 of the Federal Rules of Criminal Procedure provides for this Court to sever the trials of the defendants if their joinder appears to prejudice a defendant. When determining whether severance is appropriate, courts examine the potential prejudice to a defendant against economy and efficiency. United States v. Pursley, 474 F.3d 757, 765 (10th Cir.2007). In the present case, Medina's trial should be separate from Lujan and Lamunyon due to the prejudicial evidence offered against his co-defendants which would otherwise be inadmissible and the inherent prejudice in his being tried with a death-eligible co-defendant.

**I.    Severance is appropriate due to the otherwise inadmissible evidence the Government will offer against co-defendants.**

The Sixth Amendment right to confrontation is violated if an accused is subject to a co-defendant's incriminating statement's admission at trial when said co-defendant does not testify. Bruton v. United States, 319 U.S. 123, 126 (1968). Such statements, otherwise inadmissible, often add weight to the Government's case without being subject to cross-examination as mandated by the Constitution. Id., 391 U.S. at 128; See also Crawford v. Washington, 541 U.S. 36 (2004). The inherent prejudice of such statements cannot be dispelled if the co-defendant declarant does not testify. Bruton,

391 U.S. at 132.  In such cases, economy and convenience in the judicial system cannot be placed higher than fundamental principles of constitutional liberty such as the right to cross-examination.  See Id., 391 U.S. at 135.  The "price is too high," and thus, trials should be severed under such circumstances.  See Id.

In this case, both Lujan and Lamunyon gave statements to investigators which tend to incriminate Medina.  Lujan indicates his knowledge of Medina through a car club which he belongs, and implicates Medina in drug usage.  Lamunyon provided a statement to investigators which indicates Medina arrived at the home where Grauke had been transported to originally in San Antonio.  Lamunyon further indicated that Medina's vehicle was used to transport Grauke around the city of San Antonio, at times in the trunk of Medina's vehicle.  Lamunyon's statements implicate Medina as a driver during the alleged incident.  Also, statements by Lamunyon to investigators implicate Medina in drug use, gang affiliation, and having knowledge of the killing.

It is expected that the Government will seek to offer statements of both co-defendants into evidence through its law enforcement witnesses.  The statements are obviously prejudicial to Medina.  Not only do they give crucial weight to the Government's case, but they implicate Medina in possible criminal activities (drug use and gang affiliation) which are irrelevant to the present case, yet highly prejudicial.  Furthermore, in regards to Medina, such statements are otherwise inadmissible hearsay which would be admitted in violation of his right to confrontation.  See Crawford, 541 U.S. 36.  Thus, if this Court were to hear the majority of a trial, including all the Government's evidence, and then learn that neither co-defendant is to testify, Medina would be entitled to a severance in order to prevent a violation of his right to

confrontation of the witnesses against him.  Clearly, this would dispel any alleged benefit to judicial economy in joining the trials of all defendants.  As such, in order to receive a fair trial in accordance with his constitutional rights, Medina's trial should be severed from that of his co-defendants.

Likewise, the Government has indicated it may attempt to offer evidence regarding Lujan's alleged connection to other murders of which Medina had absolutely no involvement under Rule 404(b) of the Rules of Evidence.  Lujan has been charged in the courts of the State of New Mexico for these murders, the allegations of which are gruesome.  It is incredible to believe that a jury could perform the overwhelming task of considering this evidence in connection with determining the guilt or innocence of Lujan and then ignore it when determining the guilt or innocence of Medina.  Juries cannot "segregate evidence into separate intellectual boxes" as would be necessary to avoid undue and unfair prejudice to Medina if this evidence was offered at trial.  See Bruton, 391 U.S. at 131.  Thus, in order to maintain his right to due process and a fair trial, Medina's trial should be severed from that of Lujan.

**II.     Severance is appropriate between non-capital defendants and co-defendants facing the death penalty.**

As this Court is aware, there are substantial differences between a capital trial and a non-capital trial at every step in the process.  Jury selection and strategical decisions differ greatly.  It is prejudicial for Medina to be placed in a position wherein he must defend himself against these added factors which would otherwise not be present in a trial of a similarly situated person if no capital co-defendant was also facing trial.

In capital trials, prospective jurors must be questioned concerning their views on

capital punishment and the effect those views may have on their ability to follow their oaths and the law in rendering an impartial decision.  <u>Witherspoon v. Illinois</u>, 391 U.S. 510, 513 (1968); <u>Battenfield v. Gibson</u>, 236 F.3d 1215, 1221 (10th Cir.2001).  This inquiry is completely irrelevant to non-capital defendants such as Medina.  Furthermore, it may result in the excussal of a substantial number of jurors for cause in a trial who would otherwise not be stricken for cause and be appropriate jury members if Medina's trial were separate.  In a non-capital case, it would be inappropriate for the Court to dismiss jurors for cause for reservations they had concerning the death penalty.  Just as the Court would not excuse jurors for cause in this case due to their apprehension over laws against tax fraud, a situation which has no bearing on Medina, it is not appropriate that Medina undergo trial before a jury that has been death-qualified.  Clearly, the lengthy questioning of the jury pool in regards to capital punishment is irrelevant to Medina, unnecessarily excuses potential jurors and is severely prejudicial.

This process will further prejudice Medina by immediately focusing jurors on sentencing rather than guilt/innocence.  Jurors considering punishment prior to determining guilt/innocence is highly inappropriate as evidenced by Tenth Circuit Uniform Jury Instruction 1.20, which states that jurors are not to consider possible punishment in any way when deciding a verdict.  The focus on punishment which will occur during voir dire will imply that guilt is a foregone conclusion for these defendants and that the jury's focus should be on sentencing.  This will necessarily create a conflict wherein jurors, due to their humanity, cannot ignore the punishment aspect of the case while attempting to decide guilt/innocence.

There are situations wherein "the risk that the jury will not, or cannot, follow

6

instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." Bruton, 391 U.S. at 137.  This is one of those situations.  Jurors are human, and will thus be unable to compartmentalize the focusing of sentencing on Lujan, with the necessity to give the proper attention to the guilt/innocence of Medina.  The result is an improper lowering of the prosecution's burden of proof as to the guilt or innocence of Medina.  Thus, the Court should grant severance.

As the jury will immediately be focused on sentencing, they will also immediately be focused on the sole capital defendant in a joint trial, Lujan.  This focus will continue at trial due to the simple fact that death, in it's unique severity, is different from all other criminal punishments.  See Woodson v. North Carolina, 428 U.S. 280, 305 (1976)(the severity of death requires a heightened focus on reliability as opposed to non-death cases); Furman v. Georgia, 408 U.S. 238, 306 (1972)(Stewart, J., concurring)(death differs from all other forms of punishment in its unique total irrevocability and rejection of rehabilitation). The effect of this will be to diminish the importance of Medina's case in the eyes of the jury, thereby depriving him of a fair trial.

The prejudicial effect is further enhanced by the necessary tactical decisions in capital defense, which often center around a focus on mitigating evidence at trial.  See Wiggins v. Smith, 539 U.S. 510, 524 (2003)(ABA standards are guide to determining reasonably effective assistance and include focus on mitigating evidence and rebuttal of aggravating evidence); Smith v. Mullin, 379 F.3d 919, 939 (10th Cir.2004)(sentencing is the most critical phase of a capital case and requires a focus on mitigating evidence); American Bar Association Guidelines for the Appointment and Performance of Defense

<u>Counsel in Death Penalty Cases</u>, revised February, 2003.  Such a strategy is obviously at odds with the purely guilt/innocence concerns of Medina's defense.  This can lead to antagonistic approaches to trial as well as jury selection between co-defendants, which will add to the cumulative prejudicial effect of forcing Medina to proceed to trial alongside capital co-defendant Lujan, whom the jury will concern itself with more.

The prejudice of such an inevitable situation is clear,[1] and the possibility that the jury will not comply with their duties is too strong to be ignored by this Court.  Thus, Medina should be granted a separate trial.

Counsel for Medina has contacted Assistant United States Attorney Maria Armijo concerning the relief requested herein, and she has indicated her objection.  At the same time, while this Court previously indicated motions for discovery and severance were to be filed on or before Friday, September 7, 2007, due to an unexpected medical emergency, Medina's counsel requested an extension of one business day within which to file this motion from AUSA Armijo on Thursday, September 6, 2007.  AUSA Armijo had no objection to Medina filing this motion on Monday, September 10, 2007, provided the Government is still allowed the appropriate time period (i.e. fourteen days) within which to file a response.

WHEREFORE, the Defendant Eugenio Medina, by and through his attorney Billy

---

[1] Counsel for Medina, Billy R. Blackburn, has been involved in death penalty litigation in federal court for the District of New Mexico and the District of Arizona.  In the course of said litigation, attorneys representing non-death eligible defendants have filed severance motions based upon affidavits from Richard Burr, Federal Death Penalty Resource Counsel, and Dr. Edward J. Bronson to evidence the prejudice to non-death eligible defendants when joined with death eligible defendants.  Based upon the response from the Government to this motion, counsel may offer affidavits of the above, or similar experts, in reply in support of this motion, and/or, in the alternative, arrange for such experts to offer testimony at an evidentiary hearing relating to this motion.

R. Blackburn, hereby respectfully requests this Court grant a severance of his trial from that of co-defendants Kasey Lamunyon and Larry Lujan.

                                        Respectfully submitted,

                                        *Electronically filed 9/10/07*

                                        BILLY R. BLACKBURN
                                        Attorney for Defendant
                                        1011 Lomas Blvd. NW
                                        Albuquerque, New Mexico 87102
                                        (505) 242-1600

       I hereby certify that a true and accurate copy of the foregoing Motion was emailed by CM/ECF to AUSA Maria Armijo this 10th day of September, 2007.

<u>Electronically filed 9/10/07</u>
Billy R. Blackburn