IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Cause No. CR 05-924 RB |
| LARRY LUJAN, KACEY LAMUNYON and EUGENIO MEDINA, | § § § § | |
| Defendants. | § § | |

**MR. LUJAN'S MOTION FOR DISCLOSURE OF INFORMATION CONCERNING "JAILHOUSE INFORMANTS" AND INCORPORATED MEMORANDUM**

LARRY LUJAN, Defendant, by and through the undersigned appointed counsel, Assistant Federal Public Defenders Marc H. Robert and Robert E. Kinney, moves the Court for an Order requiring the prosecution to produce pretrial all of the following described information and materials concerning so-called "jailhouse informants" or "jailhouse snitches", and in support of his motion would respectfully show the Court as follows:

1.      Mr. Lujan is charged in a Third Superseding Indictment with kidnaping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2, and murder with the intent to prevent the communication of information to federal authorities, in violation of 18 U.S.C. § 1512(a)(1)(C) and 18 U.S.C. § 2 [Doc. 145]. Not guilty pleas were entered for Mr. Lujan at his arraignment on July 18, 2007. On July 12, 2007, the government filed a notice of intent to seek the death penalty in this case [Doc. 146]. The Third Superseding Indictment includes special findings (a) through (i) relating to the government's intent. Trial in this cause is scheduled for August 15, 2008.

2. Since his arrest, indictment, Mr. Lujan has been incarcerated at the Doña Ana County Detention Center, in the company of other pre-trial detainees and convicted persons, some of whom are facing lengthy state or federal sentences. Prior to that, Mr. Lujan was incarcerated in various places, including a facility in San Antonio, Bexar County, Texas.

3. Jailhouse informants (hereinafter sometimes referred to as "snitches") have been used frequently by prosecuting authorities and have surfaced seeking "deals" in return for testimony in a disturbing number of federal capital cases.[1]

---

[1] Among these are United States v. John Javila McCullah (E.D. OK CR No. 92-CR-032-S) ("snitch" did not testify); United States v. Aquilia Marcivicci Barnette (W.D. N.C. CR No. 3:97CR23-P) ("snitch" did not testify); United States v. Dustin Higgs (D. MD CR No. PJM-98-0502) (important witness); United States v. Willis Haynes (D. MD CR No. PJM-98-0502) (important witness); United States v. Orlando C. Hall (N.D. TX CR No. 4:94-CR-121-Y) (important witness); United States v. Jaime Rosado-Rosario (D. PR CR No. 97-049 (JAF)) (witness killing plot from jail); United States v. Ian Rosario Montanez (D. PR CR No. 96-001 (PG)) (one "snitch" was the same as in Rosado); United States v. Tim Holloway (M.D. TN CR No. 3:96-00004) (co-conspirator snitch); United States v. David Cruz (D. NJ CR No. 96-730 (AET)); United States v. Cornelius Peoples and Xavier Lightfoot (W.D. MO CR No. 98-00149-02-CR-W-6) (important witness); United States v. Donnell Young (M.D. TN CR No. 3:98-00038 (NIXON)); United States v. Billie Allen (E. D. MO CR No. 4:97 CR 0141 ERW (TCM)); United States v. Keith Nelson (W.D. MO CR No. 99-138H-01) (government disclosed pretrial the existence of the "snitch"); United States v. Ricky Lee Brown, et al. (N.D. WV CR No. 1:98CR34) (six "snitches" but none who eventually testified after a pre-trial hearing was held); United States v. Lam (E.D. CA CR No. S 97-054-WBS) (jailhouse informant surfaced after deadlocked jury and government then decided to seek the death penalty); United States v. Kenneth Tatum (E.D. TX CR No. 2:99 CR 5); United States v. Coleman Johnson (W.D. VA CR No. 3:00CR00026); United States v. Kevin Gray (D. DC CR No. 1:00CR00157) (informant led to search of cell for list of names of people who died violently in DC); United States v. Angela Johnson (N.D. IA CR No. 00CR3034 MWB) ) (jailhouse snitch persuaded the defendant to give up the whereabouts of the bodies by means of a legal memo, showing that the case predated the FDPA and therefore was not death-eligible); United States v. Christopher Wills (E.D. VA CR No. 99-00396); United States v. Gerardo Jacobo (C.D. CA CR No. 99-83-(A)-DT) (defendant's cellmate later turned snitch); United States v. Billy Lyon (W.D. KY CR No. 4:99-CR-11-M); United States v. Walter Church (W.D. VA CR No. 00-CR-104-A) (taped conversations in the cell with the snitch, one conversation after the snitch, with to the government's

MOTION FOR "JAILHOUSE INFORMANT" DISCOVERY AND DISCLOSURE - PAGE 2

4.      Mr. Lujan has been in the company of numerous other detainees since his arrest more than two years ago. On advice of counsel from the day of his first meeting with counsel, he has consistently declined any attempts by other detainees to obtain information about the charges against him, government sponsored or not, and will continue to do so. Mr. Lujan has reported all contacts, whether by inmates, corrections officers or others, to counsel. Nevertheless, the possibility of manufactured conversations exists.

5.      As a safeguard and to permit the required pretrial resolution of defendant Patrick Noble's objections to any testimony of this sort, defendant Larry Lujan requests immediate disclosure of government (state or federal) sponsored or monitored contacts with the defendant Larry Lujan regarding the allegations in the indictment and any such conversation the prosecution is aware of.

---

knowledge, either made or was provided some type of alcoholic beverage); *United States v. Anthony Jones* (D. MD CR No. WMN-96-0458), 215 F.3d 1322, 2000 WL 690182 (4th Cir. Md.) (co-defendant testimony after snitch works a deal and is transferred to Jones' location); and *United States v. Rico Garcia* (N.D. CA CR No. 00 20018 JF) (N.D. CA CR No. 00-0654 CRB) (numerous snitches in Nuestra Familia prosecution). *See also United States v. Vargas* (W.D. OK CR No. 99-CR-63-ALL) (no "snitch" but two INS agents placed in defendant's cell). Such testimony is, of course, common in BOP murder cases. *See, e.g., United States v. Gregory Storey* (D. KS CR No. 96-40018-01-OES) (inmate snitch); *United States v. Patrick Noble* (E.D. KY CR No. 00-CR-132-ALL); and *United States v. Richard McIntosh, et al.* (S.D. IL CR No. 99-40044).

In *United States v. Richard Jackson* (W.D. NC CR No. 00-CR-74-ALL), a letter was disclosed strongly suggesting that an important witness - a jailhouse informant - had committed perjury. The Court struck his testimony. The government claimed to have other snitches.

**MOTION FOR "JAILHOUSE INFORMANT" DISCOVERY AND DISCLOSURE - PAGE 3**

**MEMORANDUM IN SUPPORT**

**A. The 5th and 6th Amendments are Implicated.**

6.    Government tolerated, sponsored or planted informants are both highly unreliable and frequently used, particularly in serious cases. For example, the government planted an informant in the same cell as the defendant in *United States v. Henry*, 447 U.S. 264, 266-267 (1980). The informant was instructed not to interrogate the defendant about his involvement in the crime but to be alert to any statements made by the defendant. *Id*. The informant ultimately testified at the defendant's trial concerning incriminating statements made by the defendant. *Id*. Relying on *Massiah v. United States*, 377 U.S. 201 (1964), the Supreme Court stated "the question here is whether under the facts of this case a Government agent 'deliberately elicited' incriminating statements from Henry within the meaning of *Massiah*." *Id*. at 270. It then upheld the decision of the Fourth Circuit Court of Appeals that "by intentionally creating a situation likely to induce Henry to make incriminating statements without the assistance of counsel, the Government violated Henry's Sixth Amendment right to counsel." *Id*. at 274.

7.    Later, in *Maine v. Moulton*, 474 U.S. 159 (1985), the Court expanded the *Henry* holding[2] by finding "knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity." *Id*. at 176.

---

[2] The Supreme Court stated in dictum in *Kuhlman v. Wilson*, 477 U.S. 436 (1986), that the defendant's right to counsel was not violated by the police placing in the defendant's cell an informant who merely listened and reported what the defendant said.

**THE 8TH AMENDMENT IS IMPLICATED: JAILHOUSE INFORMANTS ARE INHERENTLY UNRELIABLE**

8. The false testimony of jailhouse informants, sometimes referred to as "snitches", who typically expect some benefit in their own cases, is an important cause of the execution or near execution of the innocent. "Snitch testimony helped convict or condemn 4 of the 12 Illinois Death Row inmates who were later exonerated.  In two other cases, prosecutors had jailhouse informant testimony ready but did not use it [against innocent men]." *The Inside Informant*, Chicago Tribune (November 16, 1999) at 8 (available on WestLaw at 1999 WNLR 6854371). This means that, in 1999, of the undisputed 12 innocent men in Illinois who were convicted at trial and very nearly executed, 50% faced perjury by a criminal trying to lie his way out of trouble.

9. Mr. Lujan submits that perjury is just as likely from the usual jailhouse snitch as is the truth.  Therefore, such testimony is inherently unreliable and in need of pretrial judicial review. Oklahoma, for example, requires that juries be instructed regarding informant testimony, but recognizes that a jury instruction is not adequate to protect a defendant's constitutional rights. *See Dodd v. State*, 993 P.2d 778 (Okla.Crim.App 2000).

10. The original *Dodd* opinion held that testimony from a jailhouse informer may not be presented to a jury unless the trial judge determines, after a "reliability hearing" that the informer's testimony is "more probably true than not". *Dodd v. State,* 1999 WL 521976, 1999 OK CR 29, *rehearing granted vacating and withdrawing opinion,* 70 OBJ 2952 (Oct. 6, 1999).  The Court ultimately ordered that the state disclose to the defense a litany of items with regard to the informer, listed factors for the trial court to consider in assessing the informer's

reliability, and laid out an instruction for the jury on how to examine and weigh the jailhouse informer's testimony.

11. The procedure prescribed in *Dodd* requires the state to disclose at least 10 days prior to trial:

    (a) the complete criminal history of the informer;

    (b) any deal, promise, inducement or benefit that the offering party has made or may make in the future to the informant;

    (c) the specific statements the defendant is alleged to have made and the time, place, and manner of their disclosure;

    (d) all other cases in which the informant testified or offered statements against an individual but was not called, whether the statements were admitted in the case, and whether the informant received any deal, promise, or inducement in exchange for or subsequent to that testimony or statement; and

    (e) any other information relevant to the informant's credibility.

12. The original *Dodd* opinion (and the dissent in the subsequent opinion) also mandated a pretrial "reliability hearing" during which the court would hear the testimony of the informant (and others) and consider any evidence bearing on the informant's credibility. The factors for consideration by the trial court included:

    (a) whether the informant received or will receive anything in exchange for his testimony;

    (b) whether the informant has testified or offered evidence in other cases and received any benefit thereby;

      (c)      the specificity of the informant's testimony;

      (d)      the manner in which the informant's statement was obtained;

      (e)      the degree to which the statement can be independently corroborated;

      (f)      whether the informant has changed his testimony in the instant case or any other one; and

      (g)      the informant's criminal history.

The requirement of a reliability hearing was omitted from the Court's subsequent opinion, though the dissent argued for its retention.

      13.      With respect to a jury instruction, the *Dodd* court suggested the following language: "the testimony of an informer who provides evidence against a defendant must be examined and weighed by you with greater care than the testimony of an ordinary witness. Whether the informer's testimony has been affected by interest or prejudice against the defendant is for you to determine." The *Dodd* court then listed five factors for the jury to consider:

      (a)      whether the informant has received anything (including pay, immunity from prosecution, leniency in prosecution, personal advantage or vindication) in exchange for testimony;

      (b)      any other case in which the informant testified or offered statements against an individual but was not called, whether the statements were admitted in the case, and whether the informant received any benefit for that testimony or statement;

  (c)  whether the informant has ever changed his testimony;[3]

  (d)  the informant's criminal history; and

  (e)  any other evidence relevant to the informant's credibility.

14. The use of "snitches" in criminal – and, particularly, capital – cases has become a serious problem. The Mississippi Supreme Court has warned of:

> [A]n unholy alliance between con-artist convicts who want to get out of their own cases, law enforcement who [are] running a training ground for snitches over at the county jail, and the prosecutors who are taking what appears to be the easy route, rather than really putting their cases together with solid evidence.

*McNeal v. State*, 551 So.2d 151, 158 n.2 (Miss. 1989).

15. The Mississippi Court's concern is a reflection of the fact that cases are built on opportunistic "snitches" on an alarmingly regular basis. For this reason, the same court has warned that the testimony of either an accomplice or a snitch "is to be received and considered with caution, as from a polluted and suspicious source." *Dedeaux v. State*, 87 So. 664, 665 (Miss. 1921) (*citing Wilson v. State*, 16 So. 304 (Miss. 1894)); *see also Cool v. United States*, 409 U.S. 100, 103 (1972) (there is a "recognition that an accomplice may have a special interest in testifying, thus casting doubt upon his veracity").

16. The United States Supreme Court has noted that "[t]he use of informers, accessories, accomplices, false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility." *On Lee v. United States*, 343 U.S. 747, 757 (1952);

---

[3] *See generally United States v. Cuffie*, 80 F.3d 514 (D.C. Cir. 1996) (undisclosed evidence that prosecution witness, who testified that defendant paid him to keep drugs in his apartment, had previously lied under oath in proceeding involving same conspiracy was material where witness was impeached on basis that he was a cocaine addict and snitch, but not on basis of perjury, and where his testimony provided only connection between defendant and drugs found in witness's apartment).

**MOTION FOR "JAILHOUSE INFORMANT" DISCOVERY AND DISCLOSURE - PAGE 8**

*see also United States v. Swiderski*, 539 F.2d 854 (2d Cir. 1976) (informer paid $10,000 for his services, worked on a contingent fee basis); *United States v. Sarvis*, 523 F.2d 1177, 1180 (D.C. Cir. 1975); *United States v. Wasko*, 473 F.2d 1282 (7th Cir. 1973); *United States v. Leonard*, 494 F.2d 955, 961 (D.C. Cir. 1974); *United States v. Garcia*, 528 F.2d 580 (5th Cir.), *cert. denied sub nom. Sandoval v. United States*, 426 U.S. 952 (1976).

17.     For these reasons, the United States Supreme Court has held that snitch or accomplice testimony "ought not to be passed upon ... under the same rules governing other apparently credible witnesses...." *Crawford v. United States*, 212 U.S. 183, 204 (1909). Indeed, the Nevada Supreme Court has noted "that a jail-house incrimination is now available in a fairly large number of homicide cases." *D'Agostino v. State*, 823 P.2d 283, 285 (Nev. 1992). The Court went on to hold that special precautions must be taken to avoid presenting unreliable evidence to the jury:

> A legally unsophisticated jury has little knowledge as to the types of pressures and inducements that jail inmates are under to "cooperate" with the state and to say anything that is "helpful" to the state's case. It is up to the trial judge to see that there are sufficient assurances of reliability prior to admitting this kind of amorphous testimony to keep this kind of unreliable evidence out of the hands of the jury ....

*Id*. at 284; *see also* Cal. Penal Code § 1127a (trial courts must instruct jurors that "testimony of an in-custody informant should be viewed with caution and close scrutiny"); *People v. (Thomas) Thompson*, 45 Cal.3d 86, 143 (1988) (on proportionality review, court finds prosecution's need to rely on "snitch" testimony "disconcerting"); *Tibbs v. State*, 337 So.2d 788, 790 (Fla. 1976) (reversing a murder conviction/death sentence as being against the weight of the evidence. The testimony of a cellmate snitch was dismissed as "the product of purely selfish considerations."); *Barnes v. State*, 460 So.2d 126, 132 (Miss. 1984) (testimony of

jailhouse snitches must "be viewed with caution and suspicion even in the absence of any proof of a leniency/immunity agreement.").

18.  The Louisiana Supreme Court views the word of an informant as being less credible than that of a law abiding citizen when it comes to probable cause to search. A distinction must be drawn "between an 'informant' who is a member of the criminal community and an informant who is the witness or victim of a crime." *State v. Ross*, 561 So.2d 1004, 1009 (La.App. 4 Cir. 1990), *citing State v. Morris*, 444 So.2d 1200 (La. 1984). The testimony of a snitch may simply be too insubstantial to support a conviction. In *State v. Bay*, 529 So. 2d 845 (La. 1988), the court stated:

> Were we to assume White's demeanor on the stand made a far better impression than the cold transcript would suggest, and further assume jurors found the witness entirely credible, when viewed in the light most favorable to the prosecution, White's testimony standing alone is too insubstantial to establish beyond a reasonable doubt defendant had been offered or received something of value for killing [the victim]. No rational fact-finder could have found otherwise. (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)).

*Id.* at 851. *See generally* White, *Regulating Prison Informers Under the Due Process Clause*, 1991 S. Ct. Rev. 103, 104-105; Ted Rohrlich, "Review of Murder Cases is Ordered," Los Angeles Times (October 29, 1988) (available on WestLaw at 1988 WLNR 1792284), p. 1. (Los Angeles law enforcement authorities began a review of every case in the previous decade in which one inmate testified that another had confessed in jail. The review was ordered after a longtime informant demonstrated convincingly that while in jail he could gather enough information about a murder case to implicate a defendant he had never met. Authorities were very concerned that innocent defendants could have been convicted of murders because of testimony fabricated by jail house informants).

**MOTION FOR "JAILHOUSE INFORMANT" DISCOVERY AND DISCLOSURE - PAGE 10**

**DEATH PENALTY CASES ARE DIFFERENT**

19. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a 'special need for reliability in the determination that death is the appropriate punishment' in any capital case." *Johnson v. Mississippi*, 486 U.S. 578, 584 (1988) (*quoting Gardner v. Florida*, 430 U.S. 349, 363-64 (1977) (White, J., concurring) (*quoting Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)). It is now well established that when a defendant's life is at stake, a court must be "particularly sensitive to insure that every safeguard is observed." *Gregg v. Georgia*, 428 U.S. 153, 187 (1976). As the Supreme Court is acutely aware, the penalty of death is qualitatively and profoundly different from any other sentence. *See, e.g., Ford v. Wainwright*, 477 U.S. 399, 411 (1986) ("In capital proceedings generally, this Court has demanded that factfinding procedures aspire to a heightened standard of reliability. This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." (citations omitted)); *California v. Ramos*, 463 U.S. 992, 998-99 (1983) (recognizing "the qualitative difference of death from all other punishments"); *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982) ("the imposition of death by public authority is . . . profoundly different from all other penalties"). For this reason, our system of justice must go "to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake." *Eddings v. Oklahoma*, 455 U.S. at 118 (O'Connor, J. concurring) (emphasis added). These "extraordinary measures" must be taken at all stages of any capital trial. *Beck v. Alabama*, 447 U.S. 625, 638 (1980).

**THE GOVERNMENT SHOULD TAKE CARE NOT TO PRESENT PERJURY AT TRIAL**

20.　In *Giglio v. United States*, 405 U.S. 150 (1972), the United States Supreme Court made it clear that the prosecution may not permit the presentation of perjury at any criminal trial – let alone one where the government is seeking to have the defendant executed. Other courts have long recognized and elaborated upon the principle of *Giglio*:

> To be sure, where it may be established that a conviction has been obtained through the use of false or perjured testimony, the accused's rights secured by the due process clause of the Fourteenth Amendment of the Constitution of the United States are implicated. *And this is so without regard to whether the prosecution has wilfully procured the perjured testimony. Where such false evidence has in fact contributed to the conviction, the accused is entitled to relief therefrom.*

*Pearson v. State*, 428 So.2d 1361, 1363 (Miss. 1983) (emphasis in the original) (*citing Mooney v. Holohan*, 294 U.S. 103 (1935); *Napue v. Illinois*, 360 U.S. 264 (1959). Indeed, this general principle is so deeply rooted in the annals of the law that it barely requires repeating.[4]

"Whether the State solicits the false testimony or merely allows it to stand uncorrected when it appears does not diminish the viability of this principle...." *United States ex rel. Washington v. Vincent*, 525 F.2d 262, 267 (2d Cir. 1975); *State v. Cahill*, 311 A.2d 760 (N.J. 1973). See also *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (error is committed "irrespective

---

[4]*See, e.g., United States v. Agurs*, 427 U.S. 97, 103 (1976); *Miller v. Pate*, 386 U.S. 1, 7 (1967); *Alcorta v. Texas*, 355 U.S. 28 (1957); *Mooney v. Holohan*, 294 U.S. 103 (1935); *Brown v. Wainwright*, 785 F.2d 1457 (11th Cir. 1986); *Williams v. Griswold*, 743 F.2d 1533 (11th Cir. 1984); *United States v. Iverson*, 637 F.2d 799 (D.C. Cir. 1980); *Dubose v. LeFevre*, 619 F.2d 973 (2d Cir. 1980); *United States v. Sanfilippo*, 564 F.2d 176 (5th Cir. 1977); *United States v. Pope*, 529 F.2d 112 (9th Cir. 1976); *United States v. Librach*, 520 F.2d 550 (8th Cir. 1975); *Teague v. United States*, 499 F.2d 1381 (7th Cir. 1974); *State v. Morgan*, 299 S.E.2d 823 (N.C. App. 1983); *Walker v. State*, 624 P.2d 687 (Utah 1981); *State v. Towns*, 432 A.2d 688 (R.I. 1981); *Merrill v. Warden*, 418 A.2d 74 (Conn. 1979); *State v. Taylor*, 231 A.2d 212 (N.J. 1967).

of the good faith or bad faith of the prosecution"); *United States v. Butler*, 567 F.2d 885, 888-89 (9th Cir. 1978). This is because "[t]he thrust of *Giglio* and its progeny has been that the jury knows the facts...." *Brown v. Wainwright*, 785 F.2d 1457, 1465 (11th Cir. 1986) (*quoting Smith v. Kemp*, 715 F.2d 1459, 1467 (11th Cir.), *cert. denied*, 464 U.S. 1003 (1983)); *see also United States v. Barham*, 595 F.2d 231, 239 (5th Cir. 1979); *Boone v. Paderick*, 541 F.2d 447, 450 (4th Cir. 1976).

**FAILURE TO REQUIRE DISCLOSURE OF THE REQUESTED MATERIAL RISKS REVERSAL**

21. This type of testimony - of the jailhouse informant - poses a grave danger to the right of a fair trial and the right to reliable sentencing in a potential capital case. *See generally*, *Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (defendant's confession to jailhouse informant was motivated by fear of physical violence and informant's promise of protection found to be coerced - error to admit confession but admission of coerced confession could be harmless error); *People v. Maerling*, 385 N.E.2d 1245 (N.Y. 1978) (police officer, who engaged in long, two-way conversation whose direction became apparent almost from the beginning, trespassed on spirit, if not on letter, of principles concerning protection of defendant's right to counsel and thus jailhouse confession taken from defendant, who never talked to his lawyer before his waiver of counsel, violated defendant's right to counsel); *Commonwealth v. Moose*, 602 A.2d 1265 (Pa. 1992) (murder conviction reversed where state failed to disclose a deal with a jailhouse snitch despite a general request by the defense. Defendant's failure to seek criminal records of state witnesses was directly traceable to state's failure to identify the prisoner); *In re Wilson*, 838 P.2d 1222 (Cal. 1992), *cert. denied*, 507

U.S. 1006 (1993) (trial counsel ineffective for failing to move to suppress incriminating tape recording of phone conversation and testimony of two state agents pursuant to *Massiah*. While in custody and after appointment of counsel, defendant approached an inmate and said that he needed a "hit man" to get rid of a witness); *Williamson v. Ward*, 110 F.3d 1508 (10th Cir. 1997) (affirming *Williamson v. Reynolds*, 904 F. Supp. 1529 (E.D. Okla. 1995)) (failing to impeach two state witnesses who testified pursuant to deals and had prior history as snitches), *overruled on other grounds by Nguyen v. Reynolds*, 131 F.3d 1340 (10th Cir. 1997); *Commonwealth v. Franciscus*, 710 A.2d 1112 (Penn. 1998) (defendant's convictions were reversed due to the erroneous admission of incriminating statements deliberately elicited from defendant by a jailhouse informant after defendant's Sixth Amendment right to counsel had attached. The court rejected the state's contentions that the informant was not acting as a government agent since he had not been specifically instructed to target defendant. Instead the court looked to the existence of an "implicit understanding" between the state and the informant that he would be rewarded for supplying information); *United States v. Lozada-Rivera*, 177 F.3d 98 (1st Cir. 1999) (the court held that the erroneous admission of testimony by a jailhouse snitch indicating that defendant had attempted to bribe him the night before he was scheduled to testify at defendant's trial was not harmless. On appeal, the government conceded that the snitch was a government agent, and that he had deliberately elicited the incriminating statements from defendant); *Benn v. Wood*, 2000 WL 1031361, at *4 (W.D. Wash. June 30, 2000) (unpublished) (habeas relief granted as to capital conviction on *Brady* claim where "there was evidence not disclosed to defense which, if believed by the jury, would have painted a primary prosecution witness as completely unreliable, a liar for

hire, ready to perjure himself for whatever advantage he could squeeze out of the system, for every possible advantage."); *State v. Hunt*, 615 N.W.2d 294 (Minn. 2000) (failure to reveal that snitch was judged to be incompetent in his own criminal prosecution was reversible *Brady* error); *Byrd v. Collins*, 227 F.3d 756 (6th Cir. 2000) (six judges dissent from the denial of rehearing en banc, arguing that the combined effect of the various forms of prosecutorial misconduct "eviscerated Byrd's right to a fair trial". *Inter alia* the prosecutor failed to disclose the true facts about charges pending against "jailhouse snitch"). The possible presentation of jailhouse snitch testimony requires prophylactic action by the Court. "The judicial process is tainted and justice cheapened when factual testimony is purchased, whether with leniency or money." *United States v. Singleton*, 144 F.3d 1343, 1347 (10th Cir. 1998), *overruled on rehearing en banc* 165 F.3d 1297 (10th Cir. 1999), *cert. denied*, 527 U.S. 1024 (1999).

22.   The undersigned counsel has conferred with Assistant United States Attorneys Maria Armijo and Mark A. Saltman concerning this motion. The government opposes this motion.

## CONCLUSION

WHEREFORE, LARRY LUJAN, Defendant, by and through the undersigned appointed counsel, respectfully prays that this Court require the government to immediately disclose any and all contact between government agents or prosecutors and informants incarcerated with defendant so that Mr. Lujan can take appropriate actions and file appropriate motions, and grant such other and further relief to which the Court may find Mr. Lujan to be justly entitled.

          Respectfully Submitted,

          FEDERAL PUBLIC DEFENDER
          500 S. Main St., Suite 600
          Las Cruces, NM  88001
          (505) 527-6930
          Fax (505) 527-6933

          *filed electronically on September 10, 2007*
          MARC H. ROBERT
          ROBERT E. KINNEY
          Assistant Federal Public Defenders
          Las Cruces Office

          *Counsel for Larry Lujan*

### CERTIFICATE OF SERVICE

   I hereby certify that a true and correct copy of the foregoing Motion for Disclosure of Information Concerning Jailhouse Informants was served on the following persons by e-mail and physical service on September 10, 2007:

| | |
|---|---|
| Maria Armijo | Billy R. Blackburn |
| Mark A. Saltman | 1011 Lomas Blvd NW |
| Assistant United States Attorneys | Albuquerque, New Mexico 87102 |
| 555 S. Telshor, Suite 300 | *Counsel for Mr. Medina* |
| Las Cruces, New Mexico 88011 | |
| | |
| Jess R. Lilley | Michael L. Stout |
| 1014 S. Main | 910 Lake Tahoe Ct. |
| Las Cruces, New Mexico 88005 | Las Cruces, New Mexico 88007 |
| *Counsel for Mr. Lamunyon* | *Counsel for Mr. Lamunyon* |

          *filed electronically on September 10, 2007*
          MARC H. ROBERT

L:\Robert\lujan\discovery pleadings\final discovery motions\jailhouse informant motion.wpd